IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY<br>378 N. Main Avenue,<br>Tucson, AZ 85701,<br><br>*Plaintiff*,<br><br>v.<br><br>U.S. DEPARTMENT OF THE INTERIOR<br>1849 C Street NW,<br>Washington, D.C. 20240,<br><br>*Defendant*. | Civil Action No.: _____<br><br>COMPLAINT FOR DECLARATORY<br>AND INJUNCTIVE RELIEF<br><br>Freedom of Information Act, 5 U.S.C. § 552 |

## INTRODUCTION

1.  In this action, the Center for Biological Diversity ("Center") challenges the failure of Defendant, the U.S. Department of the Interior ("DOI"), to provide records concerning the agency's decision to propose rescinding the regulatory definition of "harm" in the Endangered Species Act's ("ESA"), 16 U.S.C. § 1532(19), implementing regulations, 50 C.F.R. § 17.3, in violation of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *as amended*.

2.  Congress enacted the ESA in 1973 to "provide a means whereby the ecosystem upon which endangered species and threatened species depend may be conserved." 16 U.S.C. § 1531(b). This is achieved, in part, by Section 9 of the ESA which prohibits actions that purposefully or incidentally "take" endangered species. *Id.* § 1538(a)(1)(B). The ESA defines "take" as "to harass, *harm*, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." *Id.* § 1532(19) (emphasis added). Congress intended this prohibition to be interpreted broadly to include "every conceivable way in which a person can

'take' wildlife." S. Rep. No. 93-307, at 7 (1973), *as reprinted in* 1973 U.S.C.C.A.N. 2989, 2995. Though the ESA does not separately define the word "harm" in the definition of "take," regulations promulgated by the U.S. Fish and Wildlife Service ("FWS") in 1975, which were later clarified in 1981, define "harm" as "an act which actually kills or injures wildlife." 50 C.F.R. § 17.3; *see also* Reclassification of American Alligator and Other Amendments, 40 Fed. Reg. 44412 (Sept. 26, 1975); Final Redefinition of "Harm," 46 Fed. Reg. 54748 (Nov. 4, 1981). "Such an act may include significant modification or degradation where it actually kills or injures wildlife by significantly impairing essential behavioral patterns, including breeding, feeding, or sheltering." 50 C.F.R. § 17.3.

3. In 1995, the Supreme Court upheld the regulatory definition of "harm," finding that it "naturally encompasses habitat modification that results in actual injury or death to members of endangered or threatened species," is in line with the ESA's conservation purpose, and supported by Congress' later amendment of the ESA to permit incidental take including habitat modification. *See Babbitt v. Sweet Home Chapter of Communities for a Greater Oregon* ("*Sweet Home*"), 515 U.S. 687, 687–88 (1995).

4. For five decades, since 1975, the regulatory definition of "harm" has thus aligned with the plain language and conservation purpose of the ESA. Yet, on April 17, 2025, FWS and the Department of Commerce's National Marine Fisheries Service ("NMFS") (collectively "the Services") issued a Notice of Proposed Rulemaking in the Federal Register to rescind the regulatory definition of "harm." Rescinding the Definition of "Harm" Under the Endangered Species Act, 90 Fed. Reg. 16102 (Apr. 17, 2025). Drawing primarily from Justice Scalia's dissent in *Sweet Home*, the Services' proposal alleges that the existing definition of the word "harm" does not match "the single, best meaning of the statute." *Id.* at 16103.

5. If finalized, the Services' recission of the regulatory definition of "harm" will upend the sensible approach they have utilized for decades to require reasonably prudent measures or alternatives to avoid habitat destruction that may otherwise lead to extinction. The Center is unaware of any scientific or regulatory need for the recission. Given that the ESA was enacted with overwhelming bipartisan support, remains our nation's strongest environmental law, and continues to receive strong public support, the Center is deeply interested in, and affected by, how the recission of the regulatory definition of "harm" could harm, undermine, or negate the Center's longstanding efforts to protect endangered species and their native habitat.

6. On April 30, 2025, the Center submitted a request for records pursuant to FOIA to DOI's Office of the Secretary ("OS") seeking records "mentioning, including, discussing, and/or documenting the development of the proposal to rescind the regulatory definition of 'harm'" in the [ESA] regulations." As of the date of the filing of this Complaint, the Center has not received any determination or records responsive to this request.

7. OS's unlawful refusal to comply with FOIA's statutorily mandated deadline for a determination on the Center's FOIA request, failure to conduct an adequate search for responsive records, and failure to promptly release responsive records undermine FOIA's policy of government transparency.

8. Prompt public access to these records is necessary to effectuate FOIA's statutory purpose. Accordingly, the Center seeks (1) declaratory relief establishing that Defendant has violated FOIA and (2) injunctive relief directing Defendant to provide the Center with all responsive records without further delay.

## JURISDICTION AND VENUE

9. The Court has jurisdiction over this matter pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331 because this action arises under FOIA and the Declaratory Judgement Act, 28 U.S.C. §§ 2201–2202.

10. Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

11. Declaratory relief is appropriate under 28 U.S.C. § 2201(a).

12. Injunctive relief is appropriate under 5 U.S.C. § 522(a)(4)(B) and 28 U.S.C. § 2202.

## PARTIES

13. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a national, non-profit conservation organization with offices throughout the United States and is headquartered in Tucson, Arizona. The Center has more than 93,000 members. The Center works through science, law, and policy to maintain and increase protections for air and water; plants, animals, and their native habitats; a livable climate; public lands; and healthy communities. The Center's Endangered Species Program, which submitted the FOIA request at issue, specifically focuses on protecting and recovering all endangered and threatened species and their habitats.

14. FOIA requires the Defendant to search for and promptly produce the requested records to the Center. Defendant's failure to do so harms the Center because it deprives the Center from timely obtaining information about Defendant's development of the proposal to rescind the regulatory definition of "harm," a regulation which has protected and conserved endangered and threatened species for five decades.

15. Defendant's failure to comply with FOIA harms the Center's ability to provide full, accurate, and current information to its members and the public on a matter of public interest. Absent this information, the Center's mission to protect endangered and threatened species and their habitats is adversely affected. The Center has also been required to expend resources to prosecute this action. The relief requested by the Center will remedy the harm caused to the Center by the Defendant.

16. Defendant U.S. DEPARTMENT OF THE INTERIOR, within which OS resides, is a cabinet-level agency within the executive branch of the U.S. government tasked with implementing the ESA for terrestrial species. OS is tasked with policy development and DOI's administrative operations. DOI is a federal agency that possesses and controls the records the Center seeks, and thus is subject to FOIA. *See* 5 U.S.C. § 552(f). As such, DOI's OS is responsible for fulfilling the Center's FOIA requests.

## STATUTORY BACKGROUND

17. FOIA's primary purpose is to improve government transparency and accountability by requiring the disclosure of agency records and information. It establishes the public's right to access all federal agency records, 5 U.S.C. § 552(a), unless one or more narrow statutory exemptions apply. *Id*. § 552(b).

18. Recognizing that the timely disclosure of requested records is essential to fulfilling its purpose, FOIA imposes strict deadlines for agencies to respond to FOIA requests.

19. Within twenty working days of receiving a request, an agency must (1) determine if it will release requested records and (2) notify the requester of (a) its determination and the reasons therefore, (b) the right to seek assistance from the FOIA Public Liaison, and (c) the right to appeal an adverse agency determination. *Id*. § 552(a)(6)(A).

20. In order to make the a lawful "determination," the agency must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the "determination" is adverse. *Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 188 (D.C. Cir. 2013).

21. An agency may extend the twenty working day deadline for an additional ten working days only by giving a written notice to the requester that sets forth the "unusual circumstances" that justify an extension, and by providing a date by which the agency expects to make a determination. *Id.* § 552(a)(6)(B)(i). To invoke such "unusual circumstances," however, the agency must provide the requester with "an opportunity to limit the scope of the request so that it may be processed within [twenty working days] or an opportunity to arrange with the agency an alternative time frame for processing the request or a modified request." *Id.* § 552(a)(6)(B)(ii). When asserting such unusual circumstances warrant an extension, the agency must make its FOIA Public Liaison available to assist in the resolution of any disputes between the requester and the agency. *Id.*

22. FOIA requires each agency to make reasonable efforts to search for records in a manner that is reasonably calculated to locate records that are responsive to the FOIA request. *Id.* § 552(a)(3)(C)–(D).

23. FOIA requires federal agencies to promptly disclose requested records. *Id.* § 552(a)(3)(A), (a)(6)(C)(i).

24. In certain limited instances, records may be withheld pursuant to nine specific exemptions. *Id.* § 552(b). These exemptions must be narrowly construed in light of FOIA's

dominant objective of disclosure, not secrecy. An agency bears the burden of proof if it claims any exemption applies to withhold responsive documents. *Id*. §552(a)(4)(B).

25. Even where records may be exempt from disclosure, FOIA requires agencies to disclose reasonably segregable portions of those records. *Id*. § 552(d).

26. FOIA provides this Court jurisdiction "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id*. § 552(a)(4)(B).

## STATEMENT OF FACTS

27. On April 30, 2025, the Center submitted to OS a FOIA request for records from January 20, 2025, to the date OS conducts the relevant search, seeking "the records mentioning, including, discussing, and/or documenting the development of the proposal to rescind the regulatory definition of 'harm' in the [ESA] regulations."

28. That same day, April 30, 2025, OS acknowledged that it had received the Center's request and assigned the request the tracking number DOI-2025-006221.

29. On May 5, 2025, OS granted the Center's fee waiver request and informed the Center that its request was "Complex"—meaning that the agency expected it to take twenty-one to sixty days to process the request. OS also stated that it was taking a ten working day extension because it needed "to search for and collect requested records from field facilities or other units that are separate from the office processing the request."

30. On June 10, 2025, the Center, via email, requested an update on the status of its FOIA request to OS.

31. As of the date of this filing, OS has made no further communications with the Center and has not responded to the Center's request for a status update.

32. As of the date of this filing, more than forty-nine working days have passed since OS received the Center's April 30, 2025, request. This is past the twenty working day deadline required by FOIA and the additional ten working day extension claimed by OS. 5 U.S.C. §552(a)(6)(A)(i), (a)(6)(B)(i).

33. As of the date of this filing, OS has not provided a lawful determination to the Center describing the scope of the records it intends to produce or withhold, explained the reasons for withholding any records, or informed the Center that it may appeal any specific adverse determination within the relevant time periods in 5 U.S.C. § 552(a)(6)(A) or § 552(a)(6)(B).

34. As of the date of this filing, OS has not disclosed any records to the Center pursuant to its April 30, 2025, request, tracking number DOI-2025-006221.

35. As of the date of this filing, OS has not requested additional information from the Center, notified the Center of any lawful circumstances that prevent OS from complying with FOIA's deadline for a determination and prompt release of responsive records, or provided any date by which it expects to make a determination on the Center's FOIA request. *Id.* § 552(a)(6)(A)-(B).

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**OS Has Failed to Comply with FOIA's Mandatory Determination Deadline**

36. Plaintiff re-alleges and incorporates by reference all allegations made in all preceding paragraphs.

37. The Center properly requested records within the control of OS through its April 30, 2025 request, tracking number DOI-2025-006221.

38. The Center has a statutory right to a lawful final determination from OS on the Center's April 30, 2025 FOIA request in a manner that complies with FOIA. 5 U.S.C. § 552(a)(6)(A)(i), (a)(6)(B)(i).

39. In order to make a lawful "determination," OS must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the "determination" is adverse. *Citizens for Responsibility & Ethics in Wash.*, 711 F.3d at 188.

40. The deadline for OS to provide a determination on the Center's requests has lapsed because more than twenty working days have passed since OS received the Center's request. Furthermore, the extension of ten working days claimed by OS has also passed.

41. OS's failure to provide a lawful determination on the Center's request by FOIA's mandatory deadline violates the Center's right to a determination. 5 U.S.C. § 552(a)(6)(A)(i), (a)(6)(B)(i).

42. OS has no lawful basis under FOIA for its delay and has provided no lawful basis to withhold a determination in response to the Center's request.

43. The Center is deemed to have exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

44. The Center's organizational activities will be adversely affected if OS is allowed to continue violating FOIA's requirements to provide a determination on the Center's request.

45. Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in records requests to OS in the foreseeable future.

46. Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, OS will continue to violate the Center's right to receive a determination in response to the Center's requests for records under FOIA.

## SECOND CLAIM FOR RELIEF

### OS Has Failed to Conduct an Adequate Search for Responsive Records

47. Plaintiff re-alleges and incorporates by reference all allegations made in all preceding paragraphs.

48. The Center has a statutory right to have OS process the Center's April 30, 2025 FOIA request in a manner that complies with FOIA. 5 U.S.C. § 552(a)(3).

49. Defendant violated the Center's rights in this regard because it has unlawfully failed to conduct an adequate search reasonably calculated to locate all records responsive to the Center's FOIA request. *Id.*

50. OS has no lawful basis under FOIA for its failure to conduct an adequate search for records responsive to the Center's April 30, 2025 request for records.

51. The Center is deemed to have exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

52. Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, OS will continue to violate the Center's right under FOIA to an adequate search for records responsive to the Center's April 30, 2025 request for records.

## THIRD CLAIM FOR RELIEF

### OS Has Failed to Promptly Disclose All Responsive Records

53. Plaintiff re-alleges and incorporates by reference all allegations made in all preceding paragraphs.

54. The Center has a statutory right to the prompt disclosure of requested records. 5 U.S.C. § 552(a)(3)(A).

55. OS has violated the Center's rights in this regard by failing to promptly disclose records responsive to the Center's April 30, 2025 FOIA request. *Id.*

56. OS has provided no lawful basis to withhold the records pursuant to any of FOIA's nine exemptions to mandatory disclosure or to withhold any segregable, nonexempt portion of the records. See *id.* § 552(a)(8)(A), (b)(1)–(9).

57. The Center is deemed to have exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

58. Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, OS will continue to violate the Center's right to promptly receive all records responsive to its FOIA requests.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) Declare that Defendant violated FOIA by failing to provide a timely, lawful determination on Plaintiff's FOIA request, failing to conduct an adequate search for responsive records, and failing to promptly disclose all responsive records;

(2) Order Defendant to provide a determination on Plaintiff's April 30, 2025 FOIA request, tracking number DOI-2025-006221;

(3) Order Defendant to conduct a search reasonably calculated to locate all records responsive to Plaintiff's FOIA request from January 20, 2025, to the date Defendant conducts its search;

(4) Order Defendant to produce, by a date certain, all nonexempt responsive records, any segregable portions of otherwise exempt records, and a *Vaughn* index of any records or portions of records withheld under any FOIA exemption;

(5) Enjoin Defendant from continuing to withhold any nonexempt responsive records or segregable portions of responsive records;

(6) Retain jurisdiction of this action to ensure that Defendant timely processes Plaintiff's FOIA request and that no agency records or portions of records are improperly withheld;

(7) Award Plaintiff its costs and reasonable attorney fees pursuant to 5 U.S.C. § 552(a)(4)(E) or 28 U.S.C. § 2412; and

(8) Grant such other and further relief as the Court may deem just and proper.

DATED: June 18th, 2025

Respectfully submitted,

*/s/ Ryan Adair Shannon*
Ryan Adair Shannon
(D.D.C. Bar. No. OR0007)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
Phone: (971) 717-6407
rshannon@biologicaldiversity.org

*Attorney for Plaintiff*